UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GARY LEE LOYER, SR. as Personal Representative for the Estate of Gary Loyer, Deceased,<br>　　　　　　　Plaintiff,<br>v.<br>WAYNE COUNTY, *et al.*,<br>　　　　　　　Defendants.<br>_____/ | Case No. 21-12589<br><br>Shalina D. Kumar<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

**ORDER DENYING MOTION FOR SANCTIONS (ECF No. 57) WITHOUT PREJUDICE**

　　The Estate of Gary Loyer sues Wayne County for wrongful death and violation of the Constitution for the decedent's suicide while in custody at the Wayne County Jail in February 2020.  This matter is before the Court on Plaintiff's motion for spoliation sanctions related to surveillance video at the jail.  The Court addressed issues on Defendants' video production earlier in the case.  (*See* ECF No. 56).  Plaintiff requested production of all video surveillance footage showing the decedent's jail cell around the time of his suicide.  Defendants produced segments of video from a camera pointed at the cell door—the video system works by capturing video in segments that are several seconds long.  Defendants' counsel has repeated that no other video exists.  Plaintiff insists there is more video. Plaintiff now comes to the Court seeking sanctions for spoliating the allegedly

missing video. He seeks (1) an adverse inference jury instruction stating that jurors may infer that the missing video would have been unfavorable to Defendants, (2) an order precluding Defendants form arguing that they adequately monitored the decedent, (3) monetary sanctions, and (4) further discovery to depose Detroit Police Department officers who purportedly viewed the missing video. (ECF No. 57).

Spoliation is "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999). "[A] proper spoliation sanction should serve both fairness and punitive functions." *Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009).

Federal Rule of Civil Procedure 37(e) provides for two tracks of remedies for lost electronically stored information. The first track provides that the Court "may order measures no greater than necessary to cure the prejudice" to the requesting party. Fed. R. Civ. P. 37(e)(1). The second track requires a finding of intent to deprive the requesting party of the information. On such a finding, the Court may presume that the lost information was unfavorable to the party, instruct the jury that it may presume the information was unfavorable to the party, or dismiss the action. *Id.* at 37(e)(2).

Plaintiff seeks sanctions on the second track. To succeed, Plaintiff must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citations omitted).

A.   Control and Obligation to Preserve

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'" *Forest Lab'ys, Inc. v. Caraco Pharm. Lab'ys, Ltd.*, 2009 WL 998402, at *2 (E.D. Mich. Apr. 14, 2009) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

There is no dispute that Defendants had an obligation to preserve surveillance footage once a proper request to preserve is issued. There is some dispute here about when Plaintiff requested preservation, but the dispute seems immaterial. Plaintiff says he sent a formal demand letter on March 6, 2020. (ECF No. 57, PageID.853). Defendants say the letter was dated February 28, 2020, and was received March 10, 2020. (ECF No. 59, PageID.868). The County's video

3

retention policy is to preserve video for 30 days, which expired before March 10th. (*Id.*). That said, Defendants insist they preserved and produced all the video evidence that exists, that no other video was captured. Plaintiff does not suggest that video was lost because of automatic override. Thus, the Court sees the dispute about exactly when Plaintiff demanded preservation to be immaterial to this motion.

Plaintiff insists more video exists because of a statement in a Detroit Police Department ("DPD") investigation report. Sergeant McEntire wrote the report. It says:

> Surveillance cameras on the ward were functional and the footage was reviewed by Det. Rutledge. Det. Rutledge advised the footage was hard to make out, but there was about a 20 second time period where LOYER is observed in his cell alone and appears to be twisting a bed sheet. Due to the picture quality this was all that could be viewed.

(ECF No. 57-1, PageID.861).

Defendants consider the police report statement to be hearsay. They also state that Det. Rutledge's statement was "of questionable validity." (ECF No. 59, PageID.866). They do not expound on what makes the statement "of questionable validity."

As an initial matter, Sgt. McEntire's statement about what Det. Rutledge said he watched is not hearsay because it is offered to show that video existed, not

4

for the truth of the matter asserted. *See Jackson v. Amarante*, 2013 WL 55686, at *2 (E.D. Mich. Jan. 3, 2013) ("Third-party statements in a police report . . . are inadmissible hearsay if introduced to prove the truth of the matter asserted."); *United States v. Ott*, 229 F.3d 1155 (table), 2000 WL 1276744, at *5 (6th Cir. Aug.28, 2000) ("A police report detailing the facts of an alleged theft, which is offered only to prove that the theft was reported, says nothing whatsoever about whether that item was, in fact, actually stolen. Such a report is not offered to prove the truth of the matter asserted, and is not hearsay at all.").

Still, Sgt. McEntire's police report is insufficient, alone, to conclude that there is more video Defendants did not produce. Part of the relief requested is to allow Plaintiff time to depose DPD officers who purportedly watched the additional video. Plaintiff says he did not seek to depose them earlier "due to strategic considerations and reliance on [Sgt. McEntire's report] which clearly and unambiguously described the footage." (ECF No. 57, PageID.856). That strategic decision hurts Plaintiff here. A statement about footage that was "hard to make out" and lasted about 20 seconds showing what "appeared to be" the decedent twisting a bed sheet is not conclusive evidence that there is a 20-second video showing an angle of the decedent's cell different from what was produced. The statement is ambiguous. Deposition testimony from DPD officers about video Plaintiff has not seen would bolster Plaintiff's position. Of course, the opposite is

5

true, too—testimony refuting the existence of additional video would doom Plaintiff's position. What is more, the "strategic decision" is disappointing considering that on September 12, 2024, the parties agreed to seek a delayed ruling on the motion for summary judgment *to allow Plaintiff time to depose the DPD officers who said they viewed the video*. (*See* ECF No. 56). Two weeks later, Plaintiff filed this motion. Plaintiff has not sought to depose the DPD officers, despite Defendants' agreement to stipulate to the depositions. (ECF No. 59, PageID.866).

Next, Plaintiff asserts that two of Defendants' witnesses testified that additional cameras were operational near the decedent's cell and they would have captured his actions and the officers' rounds. (ECF No. 57, PageID.854). Defendants contend that their witnesses did not testify that additional cameras were operational; they instead testified only that there were additional cameras on the floor. (ECF No. 59, PageID.869). Defendants insist that the available camera footage was produced and nothing more ever existed. So Defendants argue that there was no additional electronically stored information that they had a duty to preserve. (*Id.* at PageID.870). Based on this limited information, the Court sees no reason that the deposition testimony should establish that additional video footage concerning the events here exists.

Plaintiff has the burden of establishing that sanctions are warranted. *See Frenchko v. Monroe*, 672 F. Supp. 3d 421, 473 (N.D. Ohio 2023) (citation omitted). Given the ambiguity surrounding the existence of additional video, and viewing that ambiguity against Plaintiff, the Court cannot conclude that Defendants failed to preserve electronically stored information that they had a duty to preserve.

B. Culpable State of Mind

Plaintiff's motion also fails at the second element. The spoliation sanctions Plaintiff seeks are warranted only if Plaintiff shows that the evidence was destroyed or lost with a culpable state of mind. "This factor is satisfied 'by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.'" *Adkins v. Wolever*, 692 F.3d 499, 504-05 (6th Cir. 2012) (quoting *Beaven*, 622 F.3d at 554); *Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013) ("[E]ven negligent conduct may suffice to warrant spoliation sanctions under the appropriate circumstances.") (citation omitted). "Assessing the defendant's state of mind is important because the Court can impose different spoliation sanctions, calibrating the severity of the remedy on the party's degree of fault under the circumstances." *In re Black Diamond Mining Co.*, 514 B.R. 230, 239 (E.D. Ky. 2014) (citing *Adkins*, 692 F.3d at 554).

Plaintiff did not expressly address culpability, despite the burden to establish entitlement to sanctions. The implication in the motion is that Defendants deliberately destroyed or withheld unfavorable footage. In contrast, Defendants cite deposition testimony from one of the county jail officers who testified that the only camera that worked and recorded footage was the camera footage produced to Plaintiff. (ECF No. 59-3, PageID.879). On this record, the Court cannot conclude or infer that Defendants lost or destroyed video evidence intentionally or negligently.

C. Relevance

If it exists, the footage would be relevant, but again, the Court cannot conclude with any degree of certainty that the video exists. The court will not direct that a jury be instructed to infer the video would be unfavorable to Defendants when that video may be nonexistent.

D. Conclusion

Plaintiff asks that the Court conduct an evidentiary hearing to hear testimony from witnesses and assess the credibility of Defendants' claims. Plaintiff "is also prepared to bear the cost of a forensic examination of the jail's surveillance system to determine whether the missing footage still exists or was intentionally deleted." (ECF No. 57, PageID.855). Holding an evidentiary hearing would give Plaintiff a shot at obtaining testimony he otherwise chose, in a "strategic decision," and

8

despite the Court's blessing and Defendants' stipulation, to forgo. The Court will not hold an evidentiary hearing at this time.

That said, allowing Plaintiff time to retain a forensic examiner at Plaintiff's expense would be fair. If the results of that examination reveal a greater possibility that more video existed, and whether it still exists, Plaintiff can come back to Court seeking sanctions.

If he chooses to do so, Plaintiff must retain a forensic examiner **before January 15, 2025**. Defendants must work cooperatively with Plaintiff and the examiner to schedule a time for inspection to occur **before March 7, 2025**. As the relief requested concerns trial, not summary judgment, these efforts will have no impact on the pending motion for summary judgment. Given the allowance for Plaintiff to retain a forensic examiner, the Court **DENIES** the motion for sanctions without prejudice.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to

a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.

Date: December 3, 2024                    s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge